We'll hear argument next in Case 21-1239, SEC v. Cochran. Mr. Garr? Thank you, Mr. Chief Justice, and may it please the Court. The question in this companion case is whether the SEC Act strips district courts of jurisdiction that they have historically possessed to adjudicate and enjoin structural constitutional violations, here in the form of an agency decision-maker that is unconstitutionally insulated from removal by the President. But unlike the Axsom case, in which the plaintiff is a corporation, this case illustrates the crucial importance of this district court jurisdiction for everyday Americans who find themselves trapped before an unconstitutional agency decision-maker. The SEC acts as prosecutor, judge, and in effect executioner in its own proceedings. All of which give it an extraordinary home court advantage. And yet SEC ALJs suffer from a blatant constitutional defect, dual-layered protection from removal, that taints their very existence and vitiates their authority to act at all. That structural defect inflicts a here-and-now injury that exists wholly apart from any adverse outcome in that proceeding. Going back to Marbury v. Madison, this Court has recognized that district courts possess jurisdiction under 28 U.S.C. 1331 to enjoin government entities from acting unconstitutionally. Nothing in Section 78Y of the SEC Act, nor anything else pointed to by the government, an act in which Congress merely granted jurisdiction to the Courts of Appeals to hear challenges from final orders of the commissions, takes that jurisdiction away as to the structural constitutional claims it issued here. That conclusion is compelled first and foremost by the text of the relevant statutory provisions. It is compelled by this Court's decision in Free Enterprise Fund, which involved the same statute and the same kind of constitutional claim, and is consistent with this Court's own Thunder Basin factors. I welcome the Court's questions. Mr. Garr, is there any meaningful difference between the facts of this case and the arguments in the previous case? In essence, no, Your Honor. In this case, it's different in a few respects. Number one, Free Enterprise Fund, which we believe strongly supports Mr. Clement's position, applies even more forcefully to this case, in which it involves the same statute and the exact same claim here. I think the statute in this case, although similar in many respects, is different in at least one respect that makes this case easier, and that's the saving clause in the SEC Act, in which Congress made clear that it was not displacing traditional rights or remedies, and we think that one of the remedies that it protected was the traditional remedy of going to a federal court to get an injunction against agency action. But the short answer to your question is we believe that jurisdiction exists in both cases for largely the same reason. And one final question, just a short one. There's a lot of talk about these cases, orders actually being entered in these cases, and then they're subject to review. How often does that happen? Very infrequently in the relative sense, Your Honor. The vast majority of these cases settle more than 90 percent because the individuals just, frankly, can't endure the years of proceedings that it takes to get to an Article III. How many years has this been going on? Well, it's been going on really in our situation since Dodd-Frank, in which many of these claims have been channeled to these in-house agency proceedings. Now, the SEC doesn't have to act this way. It can go to federal district court in which citizens enjoy greater rights and protections. It can go before its own commission. But instead, it elects typically to go before its own in-house ALJs, which suffer from this blatant constitutional defect. And to the Chief Justice's point earlier, we think that the Jarchese case shows exactly the flaw with the government's position, that you would have to wait some seven years in Mr. Jarchese's case to go through those rounds of proceedings before you can finally get to an Article III court to present your constitutional claim that the agency didn't have authority to act at all against that individual. You said since Dodd-Frank. I don't have it at the tip of my brain when that was. I believe it was 2010, Your Honor, 2009, 2010. That's where more of these claims were funneled into that system. I think on the Thunder Basin analysis, our position is that the court should look, in this case, as in any statutory interpretation case, first and foremost to the text of the relevant provisions. And we agree wholeheartedly with the Fifth Circuit that those provisions unambiguously leave district court jurisdiction over the structural constitutional claims at issue. I think one reading of Thunder Basin is that the court applied those factors as a means of discerning congressional intent so that ultimately the court was engaging in inquiry into what Congress intended, albeit not in the way the court would typically construe a statute. But I think there's an important threshold consideration that explains why Thunder Basin doesn't deal with this sort of case. The threshold question that Thunder Basin dealt with was a situation where the agency action being challenged was the agency action that was the subject of an exclusive administrative scheme. So in the Elgin case, it was the CRSA's scheme, which established a system for challenging adverse employment actions or removals. And in the Thunder Basin case, it was a scheme for challenging citations and other administrative orders by the Mine Act. And that's what you had in both of those cases. And in that situation where you're challenging the very thing that Congress channeled to an alternative scheme, the Thunder Basin factors were actually a way in which the court would find that jurisdiction was preserved. Even in that instance, where the thing that you're challenging is the very thing that Congress channeled to a different scheme, Thunder Basin could say that, well, no, some of those claims are so separate from that and involve things not before the agencies can, that you could go to this court. Mr. Grubb, may I just ask you, because it seems to me that the thing that is bugging me about this, your argument, is that we could look at the statute that's here and discern that Congress intended to allow the agency to do its work and then have judicial review. Not so much, you know, exactly the nature of the claims that can be brought, but at a minimum, the fact that the statute requires the Court of Appeals to wait in general before it gets involved. You have to have a person who's been aggrieved by a final order of the commission before the Court of Appeals gets involved. Makes me wonder whether Congress really intended for 1331 to be operating to allow the district court to be issuing and considering interlocutory arguments by parties, whether they're the kind that you're making, this entire thing is unconstitutional, or other things, discovery, whatever. I'm worried about a notion that 1331 can be used here to undermine congressional intent about the finality of agency action before the courts come in. Sure. So we don't think that there's anything in 78Y, the SEC Act, which indicates an intention to displace district court jurisdiction over the structural constitutional claims at issue here. Now, you're right. Congress made clear that it wanted challenges to final orders to go to the Courts of Appeals. But another thing that's, I think, relevant to the question here is that in describing what the Courts of Appeals could do, it said it could set aside or modify an order on the record that had been developed. And I think that that's pertinent to the question here because that doesn't really give us the relief that we're looking for, which is an injunction against proceeding before unconstitutional agency action. But my question is, can we fairly discern that it was Congress's intention to allow for that kind of interlocutory argument to be made, or was it saying, I mean, I agree with you, there's nothing that suggests that that argument can't be made at all, but can we fairly look at the language here and say that Congress intended for that kind of argument to be made while the proceedings were going on? And I think it matters. I mean, one of the things that your colleague on the other side pointed out is that maybe there was a reason why Congress would have wanted that to be made later, in part because it may avoid having to have judicial review at all. And traditionally, our thought has been you don't jump in to decide constitutional questions, and if there's a way to avoid it, you do. So it seems rational to me that when Congress was putting off even court of appeals review in this case, it was saying anything that you have related to the sort of constitutional nature of this, wait until the agency finishes, and then everything can be brought at that time. Right. So I think that set of concerns is different, Your Honor, in the sense that we are suffering what this Court has called here and now injury by simply having to proceed before an ALJ that is unconstitutional in its very existence. But that assumes the merits. That assumes the merits, right? Well, what it does, it looks to the particular kind of claim here. Of course, you're right. We have to actually prove that the removal restrictions are unconstitutional. But it's what distinguishes the structural constitutional claim from the sorts of preliminary orders that you might see in an ALJ proceeding, which don't actually aggrieve one until they're embodied in an order of the commission, which at that point in time you can challenge to the court of appeals and get the relief you're asking for by having the court of appeals set aside that order. That's not true here, both because we're suffering this injury wholly apart from whether or not we win or lose at the end of the day for the agency. Why isn't that any single person who has the type of claim that would, you know, challenge the agency review in a similar way? I mean, we've heard some of the other examples of types of claims, and I'm just wondering why couldn't anybody make the argument similar to the way Justice Kagan brought up some examples, those arguments that have challenged the unconstitutional functioning of the agency? Well, I think most of the arguments that would come up tend to involve the particular facts and circumstances of the individual proceeding. The structural constitutional claims are different. They're not related in any way to the facts or circumstances of a given proceeding. They go to the inherent nature, existence of the decision-maker. And I think that that's important. I'm sorry, Your Honor. No, please. I was going to say, I think that's a very important distinction that this court has drawn, for example, in the Carr v. Saul case. I see a bit of a tension in the way you've started arguing this case because you've said many times the structural constitutional claims, the structural constitutional claims are special, different. There's a real need for this kind of review. And Thunder Basin, you know, it's really a focus on what kind of claims they are. So Thunder Basin allows you to talk about that. But your statutory argument really does not allow you to talk about that because there's nothing in these statutes that would treat constitutional, structural constitutional claims any differently from any other claims. Statutory claims, claims about just evidentiary rulings. So the way you want us to decide this case is going to have ramifications far beyond structural constitutional claims. And indeed, it's very hard on your interpretation of the statute to see why the nature of the claim would have any relevance at all. So I guess first I would say we would be comfortable if this court followed the text of what Congress enacted and held that there was jurisdiction here and perhaps jurisdiction in other cases to be sorted out, applying the tools that district courts apply all the time, exhaustion, finality, and whatnot. But the second is I guess I would disagree with the premise of Your Honor's question in the sense that structural constitutional claims are different in a way that's meaningful in the statute. For example, as to the relief that you could get in the Court of Appeals. This statute allows Court of Appeals to set aside or modify the final order. But in the structural constitutional claim, that doesn't give you the relief that you're looking for. It wouldn't give us the relief that we're looking for because we're looking for an injunction against this unconstitutional agency action. And my friend Mr. Stewart's answer on this question I think was telling. What he said in that situation is, well, you would get a decision and, you know, on remand, you know, maybe the case that comes out of the Ninth Circuit would have to follow that, you know, which is to say that the agency might not have to follow that with respect to cases in the other circuits. And we're talking, again, about the very existence, the very authority of the decision maker to act at all, which is different. And the fact that the statute is limited in terms of the relief that the Court of Appeals can grant, actually I think does speak to why these claims were not divested by Congress. Your broader argument, as Justice Kagan points out, would suggest, I think, starting over in how the Court analyzes this whole area. And maybe it's just out of sympathy for the district court judges and Court of Appeals judges who would have to deal with the fallout from that. But isn't a simpler way to deal with this? Maybe this is your narrow argument. Under the wholly collateral factor, a challenge to the structure of the agency is wholly collateral. End of story. Well, I mean, with respect, I think the easiest way for the district courts to resolve this is to look at the text of what Congress enacted. I know that. My point is there's a lot of precedent interpreting that text in Thunder Basin, NELGIN, free enterprise funding, going back. And so kind of starting over on all that would create kind of a tsunami of litigation. Maybe that's okay. Maybe it's not. But your narrower argument, which I'm supporting for purposes of this question, is just under Thunder Basin factors, under free enterprise fund, and under NELGIN, we're on the right side of the line because it's a challenge to the structure of the agency. Right. And we're ultimately content to win either way, Your Honor. But I do think on Thunder Basin, one thing that the last almost ten years has shown in the courts of appeals is that the Thunder Basin hasn't been particularly helpful to the lower courts in resolving these issues. Right. I think when Mr. Clement said the beauty of the Thunder Basin factors, I definitely cringed because they have not been beautiful in the lower courts. But a wholly collateral, a challenge to the structure of the agency, is that one paragraph of free enterprise fund kind of deals with that. You ought to respond to what's that other paragraph in free enterprise fund, and how would you explain that? Right. And I think the way that... That seems simple enough. I guess what I'm challenging and pushing back on is kind of throwing it all open again after decades of trying to figure out how these claims should be sorted out causes me some concern at least. I guess I understand Your Honor's concern. I think it should be addressed by the fact that district courts have been applying the sorts of the tools and determining when or whether to exercise jurisdiction for centuries. In Standard Oil, one of our friends' cases they like the most, is an example of how district courts can apply those tools. And I think what we're talking about here is treating this case involving one of the most important questions in the court's jurisdiction differently than any other statutory interpretation case. I think what we would ask and hope is that this court make clear the involvement and preeminence of the statutory text in resolving these questions. I think the Thunder Basin factors can be complementary. In some respects you could take, and Justice Kagan's question earlier I think alluded to this, one might plausibly interpret the reference to any final order to include a challenge to preliminary orders that wouldn't actually aggrieve someone until they were embodied in a final order. And in that respect, those sorts of claims would be channeled through the review scheme. But I think here fundamentally this case doesn't sort of fit cleanly within the Thunder Basin paradigm because we're not challenging the kind of agency action that is covered by the alternative review scheme. We're not like Elgin, we're not like Thunder Basin in that respect. We're not challenging the final order. We're challenging something that is completely separate. Yeah, and in that respect, just to add one more, you're like Free Enterprise Fund, and just if you can address the part of Free Enterprise Fund that is sort of problematic for you. So we think that the better reading of that is that the court was just responding to the government's argument and that Ms. Cochran is in the same position as the plaintiff in the Free Enterprise Fund case in the sense that the only way that she could guarantee that she could get to an article-free court to raise her claim is essentially to default in her administrative proceedings. In that respect, she does have to bet the farm because, you know, although it's unlikely given the agency's track record, if she won on the merits course, but if she won, she wouldn't be able to present her structural constitutional claim to a court of appeals ever. And again, I mean, just on the meaningful judicial relief, I wanted to emphasize this point that Mr. Clement made in rebuttal. Here it's not clear that getting relief at the end of the day is going to be relief at all for this type of constitutional claim because the way to get relief for a structural constitutional violation is to immediately enjoin the agency proceedings so that you don't have to go through them. I mean, under this court's decisions in Collins v. Yellen, it's at least much more challenging to get relief retrospectively, which underscores why waiting to the end of the proceeding, you know, years down the line, is not meaningful in the constitutional sense, much less in the practical sense. Can I take you back to Free Enterprise Fund following along Justice Kavanaugh's question? I mean, there's some awfully good language in Free Enterprise Fund for you on the collateral point as well as on the expertise point. And the collateral point is very intuitive to me here, so maybe it doesn't really matter what Free Enterprise Fund says about it. But I take even the first paragraph to be just responding to the government's argument. In other words, it was this strange situation in Free Enterprise Fund where they're objecting to the board, but you have to get to the commission. And so the government says, well, just seek commission review. And the first thing that the court says before the second paragraph, even in the first paragraph, is, well, that would be really strange just to seek commission review when your beef is not with the commission's rules. So I take even that collateral point to be not answering the collateral question. Well, I think, and if you don't think that you're bound by Free Enterprise Fund on that point, then that's fine. But we think that by far the better position is if it is wholly collateral. Because Free Enterprise Fund doesn't go as far as you want it to go. Well, we think that the Fifth Circle was right in saying that ultimately controls. We're not disputing that there are factual differences between the case. We don't think that they call for a different understanding or conclusion on any of the Thunder Basin's factors. That's how this court resolves the case. I mean, I took the government not really to be fighting too hard on wholly collateral agency expertise. I mean, I think they largely focus to the extent they go into a Thunder Basin analysis on the opportunity for meaningful judicial review. And I think, as I indicated earlier, forcing individuals to go through this unconstitutional proceeding, the chance that they could ultimately get to an Article III court is not meaningful judicial review in any sense. And if I could just repeat the question that I asked, Mr. Clement, how is it different from a person having a subject matter jurisdiction claim in a court? In other words, this is the wrong court. I shouldn't be in this court at all. Right. And we save that until the end. How is this different? I think, I mean, first of all, you're before an Article III court. You're not before an administrative decision maker that is not independent, protected with the protections of Article III. And I think, and that's important. We're talking about individuals who are hauled before administrative agencies who ultimately want to present their claim to an Article III court. I mean, the other difference, of course, is subject matter jurisdiction, although, you know, protected in some respects under the Constitution, here we're talking about constitutional violations. And this court has always, going back hundreds of years, recognized the historic role of district courts in being open to hear and address unconstitutional government action, particularly of the structural type. I'm still not sure why. I thought that the whole purpose of a special review scheme, especially one that puts review in an agency, is to consolidate rather than bifurcate review of agency action. And here, as the government pointed out, when it did want the bifurcation with temporary cease and desist orders, the Congress made an exception, sending that to the district courts. I think that really shows you that when Congress wants to send something else, it knows how to. That's what it did in the CSRA review scheme. So I don't, and like Elgin, I have a hard time thinking why the nature of the constitutional claim would deprive the parties or the district court of clear guidance that that should go through the scheme. I still don't understand, is there something special about structural constitutional claims? And I don't really know what they are, because for you it's easy. It's removal, okay? But your colleague, Mr. Clement, wants to go broader on what structural is, and I don't really see how you divide that out from just regular due process claims. But maybe you can give me a clearer definition than I've received so far in the case law, or from Mr. Clement, on what structural means to you. Sure. And give me some sort of special damage that you're suffering under that definition. So on structural constitutional claims, I'd point you to the court's decision in Carver v. Solomon, which they've recognized the class of claims as structural constitutional claims and cited. I'm sorry, which case? Carver v. Solomon. Remind me of what it said. In that case, the court held that you didn't have to exhaust appointments, clause challenges before administrative agencies that you could bring that independent, bring that in Article III court. And because of the unique nature of structural constitutional claims, among other considerations, but in discussing structural constitutional claims, the court cited numerous cases of examples, including the Free Enterprise Fund case. In terms of why they're different, Your Honor, we are suffering, but the mere fact of having to proceed before a nonconstitutional agency decision-maker inflicts what this court called a here-and-now injury that exists wholly apart from the ultimate outcome of that proceeding. And that's different from almost any other type of preliminary challenge you could imagine to that proceeding. But if there's a due process violation of any kind in a proceeding, whether it's a violation of the regulation or a violation of not enough notice or not enough clarity, those things routinely, certainly in court cases, we lead to the end. But I don't know why we should be permitting district court interference. With the process that Congress has given to the agency to conclude that matter. So I think this court has recognized that structural constitutional claims are different in terms of how they inflict injury that's separate and unique. And the other point I would say is, in order to get meaningful redress of that injury, you need an injunction that stops the proceedings forcing you, that prevents you from having to undergo them again. And that's different from a case where even if you've suffered a due process violation based on the particular application of a rule or statute, you could get relief from that, getting relief from the order. That's not true with respect to this unique class of constitutional claims here. Thank you, counsel. Justice Thomas? Anything further, Justice Sotomayor?  Just a couple quick questions, I hope. First, the government relies heavily on 704 of the APA. And I'd just like to give you a chance to address that. So the APA and non-jurisdictional arguments are waived. In our case, they weren't addressed below. That's point one. Second, we're not bringing an APA cause of action. Our cause of action is the traditional one that this court recognized in free enterprise fund. So it's not clear to me that the APA limits would apply at all. And third, I mean, ultimately we agree with Mr. Clement that the APA doesn't strip jurisdiction any more than the SEC Act does. And that's ultimately what the government would be saying is that Congress granted this jurisdiction in 1331. The SEC Act didn't take it away. But lo and behold, 10 years later in a different provision that didn't talk about jurisdiction,  and we don't think that that's a fair reading of the statute. And second, I wanted you to explain how you thought Thunder Basin interacted, properly understood, with a plain reading of these statutes. So we would start with the text of the statute. We think that the Thunder Basin factors in some ways could be relevant in thinking about whether Congress actually intended to strip jurisdiction. I mean, for example, where you're talking about something that is wholly collateral, where the agency doesn't have expertise to address, it would be unusual to think that Congress forced parties to go through the administrative proceeding before getting judicial review on that. So in that respect, we think the factors could inform the court's analysis of what Congress intended and supplement a textual inquiry. But we think ultimately Congress says what it means and means what it said. And here, as the Fifth Circuit concluded, the textual analysis is quite straightforward. Well, the textual analysis here, you know, it says final orders are reviewable in the Court of Appeals, and we don't have one of those. Correct. I could understand maybe a world in which we would look, if we had a final order, to Thunder Basin factors to see whether, nonetheless, there should be room for a district court proceeding. And I think that may be what happened in Thunder Basin. I just want to give you a chance to react to that. I think that's exactly right, Your Honor, that really if you look at Thunder Basin and Elgin, what they say is you look first to whether you're challenging an agency action that is the subject of an exclusive judicial review scheme. And at that point, or if you say yes, then you can engage in a Thunder Basin analysis to see whether, nevertheless, the district courts would still have jurisdiction over that claim. So we don't get past that first stage here, because we're not challenging the agency, any agency action covered by an exclusive statutory scheme. We're not challenging the final order. Justice Kavanaugh? Justice Jackson? Yes. So I guess you could also read the statute, as I said at the beginning, to raise the concern that you're not challenging a final order, that if you read the statute to be Congress's intention to not allow for judicial review while the agency has the issue, then the fact that you're not challenging a final order seems problematic. But let me ask you to react to something that Justice Kavanaugh started helpfully in the sense that he said, okay, so if we're going to craft an order consistent with your view, we could say that claims that are structural and constitutional are wholly collateral and therefore would be allowed to be brought under 1331 jurisdiction. I'm wondering whether to temper my concern that allowing for 1331 jurisdiction to occur for those structural claims while the agency has the issue, could we also say it has to be structural and constitutional, but it has to be the kind of thing that would permit the district court to completely terminate the agency proceeding, so that we don't have it operating like an interlocutory review of an ongoing agency proceeding, but we have this requirement that the remedy that you're seeking as the person who's bringing the structural claim is to shut the whole thing down. Right. I think the answer is yes, in the sense that the structural constitutional claims are talking about the class of claims that really are going to the very existent form, inherent nature of the proceeding. So it's hard to imagine where you're making that kind of structural constitutional claim, why you would have the agency proceeding going forward. I mean, ultimately, I think the district court would have discretion as to whether or not to enjoin the agency proceedings. In our case, the Fifth Circuit enjoined the agency proceedings. What about a removal claim like the one you're bringing? I mean, aren't you just saying, you know, it's not really a defect in the particular adjudication. It is that if you gave us a different ALJ, one who had his removal protections set up differently, we'd be fine. So if the agency paused and reconfigured the ALJ and then came back to you, they wouldn't have to start again with a new indictment or whatever it is, however they start their proceedings. I mean, aren't you in a way not terminating by bringing a structural claim about ALJ removal processes? They could cure that and just keep going? So I don't think they could cure that in the sense that we're challenging the constitutionality of all SEC ALJs because all SEC ALJs are unconstitutionally insulated from removal by the statutes that Mr. Clement referred to earlier. So to get redress from that, you would actually declare the statutes unconstitutional, and that's ultimately what we're asking for in this case. You can see it on page 64 of the Joint Appendix, a declaration that those statutes are unconstitutional. But those go to the very authority and existence of the administrative decision-maker that Ms. Cochran currently faces. Thank you, Mr. Garr. Mr. Stewart, welcome back. Thank you, Mr. Chief Justice. And may it please the Court, let me just make a couple of points first before taking questions. Mr. Garr said that going back to Marbury v. Madison, courts have been authorized to grant injunctive relief against unconstitutional governmental action, and it's certainly true that there's a longstanding practice of courts without explicit statutory authority granting equitable relief to claimants who would otherwise have no access to judicial review of constitutional claims. But that authority has never been unlimited. It's always been constrained by doctrines about what can you sue about and when can you sue. On pages 47 to 50 of our brief, we cite a series of cases of this Court that stand for the proposition that courts will not intervene in pending agency proceedings until the proceedings culminate in an order or rule that sets legal obligations, imposes a sanction, etc. One of those is Myers v. Bethlehem Shipbuilding. In that case, the shipbuilding company was in NLRB proceedings and said, my operations don't have a sufficient connection to interstate or foreign commerce to make me regulable under the National Labor Relations Act. And the Court held that's the kind of claim that has to wait until the end of the administrative proceedings even though you are asserting a constitutional objection to the exercise of authority over you. Another case is Federal Power Commission v. Metropolitan Edison that we cited. If you look at the relevant page of Metropolitan Edison, you'll see literally a page of string cites to earlier cases decided before 1938 that established this principle. Courts don't intervene in pending agency proceedings, dating all the way back to a 1912 opinion written by Chief Justice Edward White. And so to us, the most difficult aspect of this case is whether the barrier to suit should be viewed as jurisdictional or non-jurisdictional. But the most salient fact is this has never been the kind of thing a person could get immediate review of in court. I welcome the Court's questions. The counsel in the earlier argument, I think you were making a point about it would not be a waste to send even these structural claims to an agency because the agency could address a number of factors that would go into that type of analysis. First, I mean, it would not be a waste for two reasons. First, because the agency could explain, for instance, why from its perspective it was either a good or a bad characteristic to have ALJs with for-cause removal protection. In 2015, the SEC issued an opinion in which it stated that it thought it would not be wise to make ALJs removable at will because it would impair their actual or apparent impartiality. Was their position a surprise? I think it's important. I think it is not. Yes, it is at least a potential surprise. That is, if the SEC commissioners or the FTC commissioners said the same thing about themselves, then that would be no surprise. But under Lucia, the ALJs are now treated as officers of the United States. They have to be appointed in conformity with the Appointments Clause. They are being appointed by the commissioners. And under the usual rule that the appointing authority has removal authority, it would be the SEC commissioners who removed ALJs if they were removable at will. It sounds to me like you're just saying the agency might write a brief, presumably defending the structure of the agency, which it can do when the case goes before the district court. I guess the two or three things we would say are, first, yes, we could put these points in our brief, but often the court — No, my point is when you send it back, you're saying the agency would — it would be a valuable thing to send to the agency a claim that the agency is unconstitutionally structured because you'll get the benefit of their views, which is what you would get if you go to 1331 and you get a brief from the government. You would get a brief, but I think in various contexts the court does sometimes distinguish between the opinions that were expressed by the agency officials, the commissioners in their own name, and the post hoc justifications from agency lawyers. And it would be a self-denying position if the SEC commissioners said, yes, we are the removing authorities, but we think it is a good thing for us not to be able to remove the ALJs at will because it would compromise their impartiality. That might or might not carry the case at the end of the day, but it would not be self-aggrandizing. But the second thing I would say in terms of would it be a waste of time, and this is what the court said in Elgin, it's what the court said in FTC v. Standard Oil, that even if the agency is not going to apply its expertise to the particular issue that is being argued about now, the agency may still apply its expertise to other subjects that will produce a ruling that will obviate the need for the court to decide the issue at the end of the day. And, Mr. Garber... Well, in Elgin, that argument, I think, would have stronger force because the issues there were intertwined with the constitutional claim. And as I understand it, the view of the court was, just as you're suggesting is true in this case, that they have something to add to it in terms of posturing the claim and its interaction with the Civil Service Reform Act provisions. But here, your multiple friends on the other side argue that's not the case at all, that this is a straightforward constitutional claim that would be presented the same way regardless of what the nature of the proceedings were. But they are also saying, independent of their arguments that the adjudicators are improperly insulated from removal, that they should not be held liable under the relevant statutes. That is, Axon's complaint initially had a count that sought a declaration that it hadn't violated the antitrust laws. Mr. Garber was just saying that Ms. Cochran believes that she is innocent. Is that just an alternative basis for relief, or is that, as I understood it to be in Elgin, that the constitutional claim was intertwined with the merits of the agency issue? Well, I think the court's point in Elgin was there was a dispute, for instance, about whether a constructive discharge had occurred. And the MSPB would obviously have expertise in the circumstances that would and would not constitute a constructive discharge. And so at least with respect to one or more of the plaintiffs, if the MSPB had concluded you were not constructively discharged, that would have obviated the need for a court to decide whether the law providing for a mail-only registration for the selective service was unconstitutional. And the court said the same thing in Standard Oil, that it didn't expect the agency to devote any more resources to the reason-to-believe determination. But it thought that if the agency determined that Standard Oil was not liable, then there would be no need for judicial review. And Mr. Garber was saying, well, that means I won't have a court entertain my constitutional challenge. But the usual way of reacting to that is it's a good thing if a court doesn't need to decide a constitutional issue because the plaintiff has awarded relief on other grounds. I'm sorry. Go ahead. I asked you this before, but I'd like you to pay attention not to the removal provision, but to the clearance process. And I know that's not in this case. It's in the other one. The clearance process and combined investigator-prosecutor adjudicatory challenges of the other case. Those are due process challenges. Are they intertwined in the merits in a different way than the removal is? I mean, they are not intertwined. There's no real overlap between the question, are those provisions valid, and the question, did Axon violate the antitrust laws or did Cochran violate the Exchange Act? So you're right that they're not intertwined with the merits provisions, but they are still intertwined with the provisions that govern SEC adjudications and judicial review of SEC adjudications. And as I was saying in response to Justice Kagan, if you had a dispute about whether an ALJ was right or wrong in excluding particular evidence that was proffered by the respondent in a proceeding, the question whether the evidentiary rule had been properly applied might be essentially unconnected to the question, did Ms. Cochran violate the securities laws? But it's still the type of issue that we... Well, I was thinking on the clearance process rules. The agency could tell us or decide to change its rules. I mean, it could decide to change the rules, but you're right. That is an issue as to which the agency could surely apply its expertise, could clarify the factors that were used in determining whether to proceed in court or to proceed administratively. It wouldn't have the barrier of a federal statute that it couldn't set aside as unconstitutional. So that's certainly an aspect of the case as to which the agency could exercise its expertise. But, yes. Mr. Stewart, in thinking about the precedents, I think there are good arguments both ways, as I've indicated in my questions. But then I think there's a broader question that Justice Alito raised earlier that I want to follow up on, which is what makes the most sense? What makes the most sense for the government? What makes the most sense for the citizens? What makes the most sense for the court system? And I think cutting against your position on that question is you can get more certainty, more clarity, quicker about a basic fundamental question about the constitutionality of the agency itself or the agency's structure itself. Now, one thing that I would be concerned about that supports you is floodgates, delay, obstruction. But, you know, unless the plaintiff's challenging the procedures, get a preliminary injunction, the agency procedures are just going to continue on. And to get a preliminary injunction, they would have to, you know, show likelihood of success. So that would deter, I would think, frivolous claims or claims that are not meritorious. So on that kind of broad way of thinking about it, the clarity, the certainty, the speed, isn't that all upside to allowing a challenge to the structure of the agency to go forward in the district court? Let me say two or three things about that. The first is a decision of a district court and even a decision of a circuit court is not going to provide certainty on these issues. And until this court decides the question, you could have a circuit conflict if you allowed district court review, just as you could have a circuit conflict if you allowed review only at the final order stage. I'll let you get to your second, but as Mr. Clement indicated, we have some examples out there where it's taken seven years or something to wind its way through on the one hand. On the other hand, you know, it could, it'll move much more quickly if it goes through the PI route and it goes through the district court route to get here. In other words, going, your point, certainty will only be provided by this court. You'll have certainty sooner under allowing the district court proceedings rather than under your approach, certainty from this court sooner. I mean, certainly a district court could issue a preliminary injunction very quickly, but that wouldn't provide certainty even within the circuit. Even an affirmance by the court of appeals on a likelihood of success standard wouldn't provide a definitive circuit court ruling. And there's really no reason to believe that systemically the process of getting a court of appeals ruling is likely to move more quickly if you have district court review and then court of appeals review than if you have agency review and then court of appeals review. You had a second point. The second thing I was going to say is that there is at least, the regime that we have now is certain agency actions are reviewable and certain agency actions are not reviewable or they are not reviewable until they've kind of crystallized in a final ruling. And you focus on what is the agency action you're challenging and then you look to the statutes that govern can you get review of that and if so, in that court. And certainly you can have close questions, but that provides a fair amount of determinacy. And I think the regime that you're postulating would create indeterminacy in two different respects. First, courts would have to devise rules for determining what is a sufficiently systemic or structural constitutional challenge to qualify. In Free Enterprise Fund, the argument was not just that the PCAO members were improperly insulated from removal. There was also an appointments clause challenge, which didn't prevail, but was to the effect that they had not been constitutionally appointed. And under that theory, they were unlawfully exercising governmental power, so every aspect of the agency's operations was alleged to be tainted. Here, what Mr. Garr is focusing on is the agency adjudications and it's a significant part of what the SEC does, but it's far from the whole thing that the SEC does. And so the lower courts would have to develop a framework for determining what is sufficiently structural. And then you'd also have a question, what non-final agency actions are reviewable for immediately? And so you have a very established rule that you can ordinarily get judicial review of a final agency regulation, but if the agency issues a proposed regulation and you think it exceeds its authority under the statute, etc., you can't get review of that. You have to wait for review until it is promulgated in final form. But under respondent's theory, there would be at least the potential for somebody to say that, well, if the agency officials who were responsible for promulgating the regulation are improperly insulated from removal, or if their activities or structure are subject to some other constitutional attack, then we should be able to challenge the agency regulation as soon as it's proposed, because until we know for sure whether the rule will be struck down, we can't make investment decisions, etc. It creates indeterminacy again, not just as to what category of legal theories will get you out of the ordinary rules, but once you've articulated what a court considers to be a structural challenge, what additional categories of non-final agency action can you challenge? Can I ask you about your reliance on collateral order doctrine cases? It's not clear to me why the situation here is, in any meaningful sense, parallel to the situation in a case where a party invokes the collateral order doctrine. In those cases, the basis of jurisdiction that the party is claiming is 1291, which limits jurisdiction, a court of appeals jurisdiction, to final decisions. In the ordinary sense of the word, the orders that fall within the collateral order doctrine are not final. They're not the last order in the case that finishes everything up. It is an exception to the ordinary meaning of clear statutory language, final decision. Here, you have your APA argument, I understand. But if we put that aside, the statutory language pushes in the opposite direction, because 1331, if you just read it literally, gives the district court jurisdiction over that. So isn't that an answer to your argument that the considerations in the collateral order doctrine cases should be read in a way that is similar to Thunder Basin's reference to a collateral case? First, I think the relevant statutory language in 1291 refers to final decisions, not to final judgments. And the court in the collateral order decisions has explained that what it has articulated is not an exception to the final decision rule. It is an interpretation of the term final decision. And the court has said, ordinarily, that is limited to final judgments. But there will be some other orders entered in the course of the proceedings that are not final judgments, but that do count as final decisions, because they finally resolve an issue having certain characteristics. And the collateral order jurisprudence has overlapped substantially with the Thunder Basin factors. That is, one of the factors is whether this order that you seek to have reviewed immediately is collateral to the merits. Another factor is, would meaningful review be available on appeal? And that overlaps with the first of the Thunder Basin factors. So our argument is not that every jot and tittle of collateral order jurisprudence should be imported into this context. It's that the court in making those determinations has been weighing very similar factors. And the one overarching similarity is that in both agency proceedings, like the Bethlehem Shipbuilding case that I referred to earlier, and under the collateral order doctrine, litigants have argued time after time, review at the end of the day would not be adequate, because in the meantime, I will be suffering the burdens that are associated with the proceedings. And time after time, the court has said, that's not a sufficient basis for getting immediate review, rather than waiting until the end of the process. The one exception that I noted at the beginning of my first argument was, in the collateral order context, the court has recognized that orders denying a statutory or constitutional immunity will ordinarily be appealable immediately. And so under the double jeopardy clause, the right protected by the Constitution is the right not to be placed twice in jeopardy. It is a right not to be tried. In these two cases and other cases like it, put the APA aside, there is no statutory language that is similar to 1291. What seems to me to be like 1291 in these cases is simply an inference of congressional intent that you draw from the statutes giving the courts of appeals jurisdiction to review certain orders of the administrative agencies. The statute doesn't even say, these two statutes don't even say exclusive jurisdiction. So we infer it's exclusive. And not only that, we infer that except for some category, some subcategory of cases, this not only gives the courts of appeals exclusive jurisdiction, but it precludes jurisdiction that district courts would have under 1331. You know, I said at the outset of this argument that in our view, really, the hardest question is whether Cochran should lose for jurisdictional reasons or should lose on some other basis, because Standard Oil makes so clear that the commencement of an agency adjudication is not final agency action. And I agree with you that it would certainly have been a plausible way for the court to proceed to say that if a claim asserts a violation of federal law, then by definition it arises under federal law, and therefore it falls within the jurisdictional grant of 1331. And if you filed your suit in district court, the district court has jurisdiction, and there are lots of other potential objections to the suit going forward, but jurisdiction is not one of them. That would have been an entirely plausible way for the court to approach this from the outset. But the court has repeatedly done the contrary in Thunder Basin, in Belgium, in Hink v. United States. That was a case involving a statute that granted the tax court authority to review certain challenges to IRS decisions regarding the abatement of interest. And the court concluded that yes, the suit that the plaintiff had filed in the court of federal claims fell within the literal coverage of the court of federal claims grant of jurisdiction and also would have fell within the literal coverage of 1331. But given Congress's evident intent that the tax court be the only available forum, those courts were divested of jurisdiction. Again, you could have come out with the same bottom line by saying, yes, there was jurisdiction in the court of federal claims, but the only cause of action that you had was elsewhere, and so your suit is dismissed. And in stressing the jurisdictional aspect of this, we have tried to brief and argue the case in the way that this court has approached similar cases in the past. But certainly the part of our brief that addressed cause of action was intended to make the point that even if you take the view that Justice Alito has propounded and that Axel and Cochran have endorsed, in which anything that asserts a claim under federal law by definition arises within the district courts, jurisdiction, it's a plausible way of approaching it, but the suits still couldn't go forward because they're not challenging anything that you can sue about. And again, to us, the salient feature of cases like Elgin, whether or not you think it was right to couch this as a jurisdictional problem is in deciding whether your suit can go forward in the court that you filed it in, we need to look at the agency action you're challenging, not at the legal theory you are asserting as a basis for finding that action invalid. I thought Free Enterprise Fund pretty clearly put the kibosh on your cause of action argument. Well, Free Enterprise Fund, as we pointed out in the brief, the PCAOB was not defined to be an agency, so any arguments based on limitations imposed by the APA wouldn't have had purchased. And we don't have, we don't quarrel with the Free Enterprise Fund courts' repetition of the fact that, yes, for a long period of time, courts have had general equitable authority to grant relief designed to ensure that constitutional violations did not go unremitied, even in the absence of expressed statutory authority. But there's a big difference between saying the courts can step in to fill the gaps, as in Free Enterprise Fund where the APA didn't apply, or as in some other cases where presidential action is an issue and the president is not an APA action. It's very different to say the court can step in and fill the gaps and say the court can provide a cause of action kind of contrary to the dictates of the APA. And as I said in the first argument, under Section 703, the APA, we think of an APA suit as a suit in district court kind of under the APA's fallback authorization when no special review provision exists. But the APA also says when a special review provision does exist, you don't have the option of choosing between that and the district court suit. You have to follow the special review provision unless it's absent or inadequate. Can I just clarify about the exclusivity of the Court of Appeals jurisdiction? I thought that was in the statute, once there's a final order. Is that right? Once there's a final order, and I think it's once the administrative, it's at some stage after the petition for review has been filed that, I can't remember exactly the procedural step, but up until that time, the agency can amend or clarify its opinion. And at a certain point, the Court of Appeals jurisdiction becomes final so that the agency no longer has that authority. But that's not a question of division of responsibility between the Court of Appeals and the district court. That's a question of at what point does the agency lose the ability to amend its order before the Court of Appeals reviews it. And is your argument about the district court no longer retaining its jurisdiction under 1331, up until that point, coming from the statute or the APA, or where is it coming from? I mean, it's coming from the combination of the Exchange Act review provision and the APA. That is, the Exchange Act review provision says the only court that can review the final order is the Court of Appeals. And the APA says preliminary action is reviewed on review of the final agency action. And so that necessarily means it will be reviewed by the court that has the authority to review the final agency action. I thought your pages 47 to 50 were saying we don't really need the APA. We just need the agency action that... It is certainly the case that our 47 to 50 included cases that were decided before the APA was enacted. And so the principle that courts would not intervene long predated the APA. And the APA simply confirms that by referring to final agency action in Section 704. But when we refer to uncodified principles of administrative law, we're met with the legitimate response by our opposing counsel that uncodified principles are less useful than enacted statutory text. And so part of our reliance on the APA is to show that these principles are not just uncodified principles. They are actually law enacted by Congress. Is the APA argument waivable? I guess... We have not waived... We didn't waive it yet. I understand that. Is it subject to waiver? I don't think it is waivable. It would be waivable. But I think the court has often distinguished between waiver of a claim and waiver of an argument in support of a claim. And so I think to the extent that we are relying on APA provisions to buttress arguments that we have been making all along... But in principle, it's not a jurisdictional problem that's not waivable. Well, I mean, again, the court has addressed this as a question of subject matter... I understand that. I'm asking for the government's view. Yes, I think just as we could raise the question of jurisdiction for the first time in this court... That is, if the court had granted cert to decide a merits question, if we had never challenged jurisdiction before but we came in and argued there was actually no jurisdiction here, perhaps the court would dig the case. What's the language in 704 that you view as jurisdictional then? The language in 704... I think the sentence says that preliminary procedural or intermediate agency action, which is defined, and we had that discussion earlier. I won't repeat that. That by its terms doesn't address jurisdiction, but it does say the court that reviews the final agency decision will be the one that reviews the preliminary steps. And that has jurisdictional... If I might finish. It says preliminary procedural or intermediate agency action. Query whether we had that here, as defined by 551, or ruling not directly reviewable is subject to review on the review of the final agency action. It doesn't talk about jurisdiction. It doesn't talk about exclusivity. So what do we do about that? I mean, it buttresses the point that Justice Kagan was making in the first argument where she thought... where she said, wouldn't you ordinarily presume that the court that is going to review the final decision will review preliminary steps along the way? And our point was, yes, you would ordinarily presume this, but this has expressed statutory authorization for it. And to the extent that the question is one of district court subject matter jurisdiction, then the fact that it's a new argument can't... What do we do about the fact that normally we say that jurisdictional statutes have to be stated clearly and we don't presume that Congress is meeting to create a jurisdictional rule unless it's telling us that? And there's no language like that here. Again, Section 704 in and of itself would not have any jurisdictional implications. And the dispute has been about whether the Exchange Act's conferral of authority on the Court of Appeals to review the final... 704 itself is not jurisdictional. I'm just trying to get the government's view. By itself, it would not limit any court's jurisdiction, but it does address the question which... It doesn't specify which court should review any category of agency conduct, but it does say in general terms the court that reviews the final decision should review the antecedent steps. And as I said in the first part of the argument, if this were the second sentence in the Exchange Act review provision, we would think of it as powerful evidence that a review of the initiation of the proceeding could take place only on review of the final order. Thank you. Thank you, Counsel. Justice Thomas, any further? Yes, one question. On Justice Gorsuch's questions, how relevant is 703, which is the provision you referenced earlier that says the form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in the court? Is that relevant at all? Oh, it's highly relevant, because what the court has often said in cases like Thunder Basin is that when Congress creates a detailed, specific scheme for review of a particular category of agency action, we will often infer that Congress intended that scheme to be exclusive and that no other court will be able to review the same agency action. And that language from 703 provides express statutory confirmation of that inference. It says the form of proceeding, the form of proceeding, definite article, for judicial review is the special statutory review proceeding relevant to the subject matter, which here everyone agrees is the Exchange Act review scheme, in a court specified by statute, which is the court of appeals, or in the absence or inadequacy thereof, any applicable form of legal action. And so it does contemplate that district court... Inadequacy. Inadequacy. It contemplates that in many instances the word absence contemplates that with respect to many types of agency conduct, there won't be a special statutory review provision, and it also contemplates that sometimes there might be one, but it will be inadequate for a particular type of claim. Justice Barrett? Justice Jackson? Can I just clarify, because I was very interested in your argument that there may still be other bases for thwarting the claims that are being brought in this case. And I just want to make sure that I understand what you mean by that. As I see what you're saying, that the very structural constitutional claims that the plaintiffs would like to bring in district court, you would read the statute here jurisdictionally, maybe, to allow them to bring it under 1331, but when you got into district court, the government might point to the APA to say there's no final agency action, so you can't proceed under those claims. Is that right? I think that's right, although I would say more generally, the logical thrust of the textual argument on the other side, and really the logical thrust of Justice Alito's question, was 1331 confers jurisdiction. It encompasses any suit arising under federal law. The Exchange Act review provision doesn't specifically divest that jurisdiction, and therefore the district court has at least jurisdiction to entertain the claim. That logic would apply not just to structural constitutional challenges, but would apply to any claim, like the one in Standard Oil, that was based on a federal statute. And so at that point we would say, that wouldn't have been an implausible reading of the jurisdictional statute, but once you surmounted the pretty easy jurisdictional hurdle, we would still be able to interpose final agency action objections, etc. Now, I take the thrust of the argument on the other side to be that structural constitutional challenges are not simply challenges that fall within the 1331 jurisdiction, but challenges that can actually be brought in court, and that will surmount any other types of non-jurisdictional challenges, because it's uniquely important that they be adjudicated quickly. If I've misunderstood Mr. Gar's argument, he can correct me. But I took their argument to be, with respect to structural constitutional claims, not just that the district court would have jurisdiction, but that the court would be obligated to decide them on the merits. Yeah, certainly. I apologize for this last question, but you brought up 703 for the first time here a moment ago. And as I understand that provision, it says, with respect to statutes that do provide a form of review, you use that. And here we have one that speaks of final orders, final orders, nothing else. And in the absence of a statute that speaks to that question, you normally proceed as you would in any court of competent jurisdiction. Is that right? You would proceed in whatever court was otherwise competent jurisdiction. For jurisdictional purposes. Right, for jurisdictional purposes. Thank you. Rebuttal, Mr. Gar? Thank you, Mr. Chief Justice. I think it's telling that my friend had very little to say about the actual text of 78Y of the SEC Act, and that instead his argument has migrated towards non-jurisdictional arguments based on the APA. Those arguments can be and have been waived here. I think they're irreconcilable with Free Enterprise Fund itself, and they provide no basis for holding that the district courts lack jurisdiction over this important class of claims. I heard my friend complaining about the difficulties of determining whether or not a claim is a structural constitutional claim or drawing the line in the district court. We don't think that that will be difficult at all. This Court has already talked about and discussed and is familiar with the concept of structural constitutional violations. That's a line that can be drawn. But to be clear, to the extent that there are any practical problems with that, they pale in comparison with the practical hardships that individuals face in being subjected to years of proceeding before an unconstitutional administrative decision-maker before they can get before an Article III court to raise a blatant constitutional defect with those decision-makers. Congress knows how to strip jurisdiction when it wants to. There are scores of statutes in which Congress has explicitly stripped jurisdiction, including district court jurisdiction. Congress did not do so either in the SEC Act or anything else that the government has pointed to. District courts have jurisdiction that they have long exercised to protect against these unconstitutional agencies' decision-makers. We ask that the Court affirm the judgment below. Thank you, Counsel. The case is submitted.